# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| MARIAN C. MCKEE, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:17-cv-01566 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | |
| CTEL NO. 1 and CLIFFORD SPENCE, | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendant CTel No. 1's Motion for Summary Judgment (Doc. No. 24). Plaintiff filed a response (Doc. No. 28) and CTel filed a reply (Doc. No. 32). For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

The Plaintiff, Marion McKee, was employed by Defendant, CTel No. 1 ("CTel") from August 6, 2012 until June 29, 2017, as a telemarketing service representative. (Doc. No. 29 at ¶¶ 1; Doc. No. 31-1 at 5; Doc. No. 30-1 at 3-4.) When she began work at CTel, McGee received a copy of the Employee Handbook (the "Handbook") and CTel management reviewed the contents of the Handbook with her. (Doc. No. 30-1 at 12.) The Handbook contained several material policies, including the Open-Door Policy, the Sexual Harassment Policy, the Tardiness/Absenteeism Policy, the No Call/No Show Policy, the Insubordination Policy, and the Employee Attendance Policy. (Doc. No. 25-1 at 2-14.) Plaintiff specifically recalls reviewing the Handbook and she stated that she knew about CTel's Sexual Harassment Policy and the Open-Door Policy. (Doc. No. 29 at ¶¶ 2-4; Doc. No. 31-1 at 13.)

1

Defendant Clifford Spence ("Spence") began working for CTel around June 5, 2015, as a trainer and coach of call center employees. (Doc. No. 25-2.) Spence was referred to as the "Interim Director of Operations," but he was an independent contractor who worked part-time for CTel. (Doc. No. 25-2 at ¶¶ 3-5.) Spence spent one day every two weeks at the Columbia, Tennessee, office where Plaintiff worked. (Doc. No. 29 at ¶ 8.) CTel President John Baur describes Spence's authority over employment decisions as limited to making recommendations and says Spence did not independently have the authority to fire, discipline, demote, change pay rates, or otherwise take tangible employment action against any CTel employee. (Doc. No. 31-1 at 7; Doc. No. 25-2 at ¶ 6.) Baur said Spence "made recommendations every day"; the call center manager, Jenni Cave-Johnson, said Spence directed the disciplinary actions taken against Plaintiff. (Doc. 31-1 at 7; Doc. No. 30-1 at 8, 10; Doc. No. 30-2 at 3-4.)

Plaintiff alleges that as soon as Spence began working for CTel in June 2015, he began sexually harassing her. (Doc. No. 30-1 at 7.) Plaintiff describes the following instances of harassment: (1) general allegations of "making advances"; (2) stating that he wanted to put his mouth on Plaintiff; (3) stating that he "talked to" or had "been with" younger women; (4) putting his arm around Plaintiff and touching her hips; (5) touching her hips and commenting that she had put on weight; and (6) saying "that's my baby" when Plaintiff completed a sale. (*Id.*) Plaintiff said that Spence told her he was "working on" getting her a promotion to team lead, a position with more responsibility but lower compensation because it had fewer opportunities for commissions. (*Id.*) Plaintiff was, in fact, named team lead (Doc. No. 31-1 at 11; Doc. No. 30-1 at 6.) The office was an open office with cubicles, and Plaintiff said "somebody would have seen [Spence]" when he was touching her. (Doc. No. 30-1 at 10.)

In response to Spence's conduct, Plaintiff told him, "That's inappropriate," or "You're being inappropriate." (Doc. No. 30-1 at 9.) Plaintiff did not initially report the conduct even though she was aware of the company policy requiring employees to report instances of sexual harassment "immediately" because she "figured he would actually get the hint from what [she] was telling him that it wasn't going to happen and that [she] was not interested." (Doc. No. 30-2 at 1.) Plaintiff claims that sometime in the spring of 2017, after about two years of this behavior from Spence, she reported it to Jenni Cave-Johnson, the call center manager. (Doc. No. 30-1 at 11.) Cave-Johnson says that Plaintiff never notified her of any sexual harassment or inappropriate conduct. (Doc. No. 25-3 at ¶ 7.) The harassing behavior stopped in March or April 2017, and Plaintiff assumed he had finally realized she was "not going to accept his advances." (Doc. No. 30-1 at 9.)

During the course of her employment with CTel, Plaintiff had numerous attendance issues. She does not dispute the attendance report, but claims she was disciplined because she rejected Spence's sexual overtures. Between January 1, 2015 and May 15, 2015, Plaintiff had been absent, late, or left early on eighteen occasions. (Doc. No. 29 at ¶ 9.) In August 2016, she was written up for "excessive absences." (*Id.* at ¶ 10.) On February 8, 2017, she was written up for attendance issues and suspended for one day. (*Id.* at ¶ 11.) Plaintiff was late to work on May 16 and 17, 2017, and was written up for excessive tardiness. (*Id.* at ¶¶ 12-13.) She received a written warning and suspension for an attendance issue on June 7, 2017. (*Id.* at ¶ 14.) Plaintiff had excused absences from work on June 8 and 9, 2017. (*Id.* at ¶ 15.) On June 21 and 23, 2017, Plaintiff was late. (*Id.* at ¶ 16, 18.) Ms. Cave-Johnson issued the write-ups, but told Plaintiff that the decision "came from Cliff [Spence]." (Doc. No. 30-1 at 8, 10; Doc. No. 30-2 at 3-4.)

On June 23, 2017, Plaintiff called to say she would be "a little late" because she needed to pick up a check from her insurance company, but she did not arrive at work until after lunch. (Doc.

No. 29 at ¶ 19-21.) As a result of the June 23, 2017, incident, Plaintiff was suspended for the remainder of the day and removed from her "closer" position. (*Id*. at ¶¶ 25-26.) She received a written warning that included an attached list of 33 separate attendance issues in 2017 (some of which were excused absences). (Doc. No. 25-1 at 19-20.) The warning stated, "Rep was insubordinate and failed to follow a directive by call center manager not to contact COO Spence[1] regarding being sent home for day for attendance issues that have been previously addressed. Rep is no longer to be in a closer position. This behavior is in direct violation of company General Expectations policies and procedures. Another occurrence or violation will result in immediate termination." (Doc. 25-1 at 19.) Ms. Cave-Johnson issued the write-up, but told Plaintiff it was decided by Spence. (Doc. No. 30-1 at 8, 10; Doc. No. 30-2 at 3-4.)

CTel admits absenteeism was not uncommon among the call center employees. "On any given day, 20 percent of our staff is out," and Plaintiff's absences were not unusual or more frequent than other employees. (Doc. No. 31-1 at 11.) Baur said it was most important that employees always call to let the company know if they are going to be late or absent, that this policy was "in bold" in the employee handbook, and Plaintiff had been a no-call/no-show on two occasions prior to her last day. (*Id*.)

On June 29, 2017, Baur and Spence went to the Columbia call center to deliver payroll. (Doc. No. 31-2 at 1.) Just before lunch, Plaintiff initiated a conversation with Baur that began with a discussion about her recent car accident and turned to Plaintiff asking for an explanation of her June 23 write-up and suspension. (Doc. No. 30-2 at 12-13.) Baur says Plaintiff became increasingly loud and defiant. (Doc. No. 31-2 at 1; Doc. No. 25-2 at ¶ 8.) Ms. Cave-Johnson said

---

[1] Plaintiff texted Spence directly on at least one occasion to ask why she had been written up and suspended. (Doc. No. 30-1 at 8.)

she could hear the conversation through the open door and that Plaintiff "became very upset and raised her voice repeatedly." (Doc. No. 25-3 at ¶ 9.) Plaintiff does not recall raising her voice during the conversation. (Doc. No. 30-2 at 13.)

Near the end of the conversation, Plaintiff made allegations against Spence, who was also in the room. The exact wording of her allegations is not agreed. Plaintiff says that she told Baur: "He says things to me the he shouldn't. He comes to my desk. He puts his arm around me. He's touching my hips. He's doing things that are very unprofessional in a workplace environment." (Doc. No. 30-2 at 13.) Baur claims Plaintiff's statement was directed at Spence and that she said, "By the way, Mr. Spence, I don't appreciate you slithering behind my desk and putting your arm around my waist." (Doc. No. 31-2 at 1.)

Either immediately before or immediately after Plaintiff made the statement about Spence, Baur said something to the effect of, "It's lunchtime. You need to go," and he told her that she would be written-up. (Doc. No. 31-2 at 2.) Plaintiff recalls only that he told her to leave and that she was unsure if she should return to work after lunch. (Doc. No. 30-2 at 13.) Plaintiff called and texted Ms. Cave-Johnson, who had overheard the conversation with Baur, asking if she should return after lunch. (Doc. No. 30-2 at 11; Doc. No. 25-1 at 16-18.) Ms. Cave-Johnson responded that she would find out and let Plaintiff know. (*Id.*) Plaintiff replied immediately, "I've already contacted my lawyer too. I'm suing." (Doc. 25-1 at 16-18.) Plaintiff did not call the office to ask if she should come back to work, but instead spent the afternoon shopping for a new car. (Doc. No. 30-2 at 13.) At some time after sending the text about "suing" to Cave-Johnson, Plaintiff says that her phone battery died. (*Id.*) At 1:53 p.m., Cave-Johnson texted Plaintiff to "come back to work." (Doc. 25-1 at 16-18.) Because her phone had died, Plaintiff did not get the message until

5

after 5 p.m. (Doc. 25-1 at 16-18; Doc. No. 30-3 at 3.) When she called the office that evening, she spoke with John Baur and he told her they were "going separate ways." (Doc. No. 30-3 at 3.)

Baur fired Plaintiff "shortly after 1 p.m." when she did not return from lunch and did not call the office. (Doc. No. 31-2 at 8.) Baur claims he was at lunch and was unaware of the conversation between Plaintiff and Cave-Johnson, unaware that Plaintiff was not sure she was supposed to return after lunch, and unaware Plaintiff claimed that she was sexually harassed. (*Id.* at 8-9.) Baur said it did not occur to him Plaintiff's statement about Spence "slithering" was an accusation of sexual harassment and he fired Plaintiff for violating the company's no-call/no-show policy for a third time. (*Id.*)

Plaintiff filed this action against CTel alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act, as well as retaliation. CTel moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving

6

party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III. ANALYSIS

#### A. Sexual Harassment

Title VII and the Tennessee Human Rights Act prohibit harassment on the basis of sex.[2] "Unwelcome sexual advances, requests for sexual favors, and other verbal conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)

---

[2] The standard for liability is the same under both Title VII and the Tennessee Human Rights Act ("THRA"). *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). Accordingly, to the extent Plaintiff's claims under Title VII survive the motion for summary judgment, so do her claims under the THRA.

7

### 1. Sexual Harassment

To prevail on a sexual harassment claim without showing the conduct was severe or pervasive, the employee must prove the following: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment complained of was on the basis of sex; (4) the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of *respondeat superior* liability. *Bowman v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000).

Under Title VII, an employer's liability for workplace harassment depends in part on the status of the harasser. If the "harasser" is a supervisor and the harassment culminated in a tangible employment action, the employer is strictly liable. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If no tangible employment action is taken, the employer may have affirmative defenses that: (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities the employer provided. *Id.* If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. *Id.*

A tangible employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance,* 570 U.S. at 429 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Plaintiff alleges Spence made sexually suggestive remarks, "made advances toward her," indicated he had some influence over whether she would be promoted to team lead, and said he

was "working on getting you in the position for the team lead." (Doc. No. 31-1 at 5-6.) Plaintiff never submitted to his advances, and nevertheless was promoted to team lead. (*Id*. at 6.) She alleges when she continued to rebuff his advances, she was subjected to disciplinary action, demoted from team lead, and removed from the "closer" position. (*Id*. at 10.)

Defendant argues Plaintiff cannot establish that her refusal to submit to Spence's sexual demand resulted in a tangible job detriment because Spence was not a "supervisor" and he did not have the authority to demote plaintiff. Defendant argues there can be no respondeat superior liability for Spence's actions for the same reason.

The Supreme Court provided guidance regarding which employees are "supervisors" for whose actions an employer is vicariously liable. *See Vance*, 570 U.S. at 431. In *Vance*, the Court held an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered the employee to take tangible employment action against the victim. *Id*. A tangible employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Id.* (quoting *Ellerth*, 524 U.S. at 761). In *Vance*, the Court noted that in situations when an employer "confines decisionmaking power to a small number of individuals, those individuals will … likely rely on other workers who actually interact with the affected employee. *Id*. at 447. Under those circumstances, the employer may be held to have effectively delegated power to take tangible employment actions to the employees on whose recommendations it relies." *Id*.

To support the argument that Spence was not a supervisor, Defendant relies heavily on *EEOC v. AutoZone, Inc*., 692 Fed. Appx. 280 (6th Cir. 2017). In *AutoZone* the parties agreed the store manager had engaged in "repulsive" behavior. *Id*. at 282. The only question was whether

9

AutoZone was vicariously liable for his harassment. *Id*. The question of liability turned on whether the store manager was a supervisor who had the authority to take tangible employment actions against the victim. *Id*. The Court found the store manager was not a supervisor even though he could initiate the disciplinary process and recommend demotion and promotion, because he could not fire, demote, promote, or transfer any employees. *Id*. at 283. The Court found the district manager did not "blindly delegate his responsibilities," that he visited the store regularly, scheduled shifts, and interacted with the harassed employees. Ultimately, the Court held the store manager's "ability to influence" did not turn him into the victim's supervisor and AutoZone was not liable for the harassment. *Id*.

The facts regarding Spence's roll in the employment actions against Plaintiff are not entirely clear. Cave-Johnson states she had "some authority" to complete employment actions for CTel, but "ultimate decision-making authority" rested with CTel President John Baur. (Doc. No. 25-3 at ¶ 4.) Cave-Johnson signed the disciplinary actions against Plaintiff (Doc. No. 25-1 at 19-42), but told Plaintiff that Spence directed her to make them. (Doc. No. 30-1 at 8, 10; Doc. No. 30-2 at 3-4.) In her declaration, Cave-Johnson did not make any statements regarding the scope of Spence's authority. (*See* Doc. No. 25-3.) CTel President John Baur claims he personally made all decisions regarding "terminations, promotions, demotions, pay changes, and final disciplinary measures," but admits he "often asked Spence for his input regarding employees' performance issues" and Spence "made recommendations every day." (Doc. No. 25-2 at ¶ 6; Doc. No. 31-1 at 7.) The evidence put forth by Defendant is not specific as to what role Spence played in recommending employment actions, the extent to which his recommendations were followed, or whether he made any recommendations regarding Plaintiff.

Plaintiff has established a prima facie case of sexual harassment. The claim is riddled with factual disputes that need to be decided by a jury, including whether Spence engaged in the harassing behavior, and whether Plaintiff was disciplined, suspended, or demoted because of her refusal to submit to his sexual advances. If Plaintiff can prove those elements of the claim, a factual dispute exists regarding the degree of influence Spence had over tangible employment decisions involving Plaintiff and whether Defendant is vicariously liable for his actions. Defendant has not shown there are no material factual disputes, therefore, the motion for summary judgment on the sexual harassment claim is DENIED.

### 2. Hostile Work Environment

Without proving a tangible employment action, a plaintiff may establish a violation of Title VII by proving the sex discrimination created a hostile or abusive work environment. *Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000). To establish a hostile work environment claim a plaintiff must prove: (1) the employee is a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on the employee's sex; (4) the harassment created a hostile work environment; and (5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *Id*.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc*. 510 U.S. 17, 21 (1993). Both an objective and subjective test must be met: the conduct must be severe or pervasive enough to create an environment a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. *Id*. at 21-22.

"In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). "Isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Occasional offensive utterances do not rise to the level required to create a hostile work environment because, "[t]o hold otherwise would risk changing Title VII into a code of workplace civility." *Phillips*, 854 F.3d at 327 (citing *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)).

The Sixth Circuit has set a high bar for what constitutes a hostile work environment. *See e.g.*, *Burnett v. Tyco Corp*., 203 F.3d 980, 981 (6th Cir. 2000) (finding that conduct was not "sufficiently severe or pervasive" to support a finding of a hostile work environment where plaintiff alleged her supervisor "placed a pack of cigarettes containing a lighter inside [plaintiff's] tank top and brassiere strap," leaving her "stunned, shocked, and exposed," and he twice made inappropriate, sexually charged comments to her"); *Bowman v. Shawnee State Univ*., 220 F.3d 456, 459 (6th Cir. 2000) (dismissing hostile work environment claim where the plaintiff alleged his supervisor had rubbed his shoulder on one occasion and "grabbed his buttocks" on another; finding these events, even considered in conjunction with a handful of sexually suggestive comments by the supervisor, were not sufficiently severe or pervasive to create a hostile work environment.)

Plaintiff claims that while Spence was in the office, which was about two days a month, he engaged in "inappropriate" behavior and sexually harassed her. Specifically, Spence said he

wanted to "put his mouth on her," put his arm around her, touched her hips and made comments about her weight, said he would try to get her promoted to team lead, and said, "That's my baby," when she completed a sale. (Doc. No. 30-1 at 7.) Plaintiff described the conduct as "inappropriate" and says no one else harassed her and she was otherwise happy with her job. (*Id*. at 9.)

This conduct, if proven, was neither pervasive enough nor severe enough to create a hostile work environment. The Sixth Circuit has established a high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory. The conduct alleged here does not clear that bar, therefore Defendant's motion for summary judgment as to Plaintiff's claim of hostile work environment is GRANTED.

**B. Retaliation**

To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show: (1) she engaged in protected activity; (2) the defendant knew of plaintiff's activity; (3) thereafter, the defendant took an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008). A plaintiff must raise an inference that her "protected activity was the likely reason for the adverse employment action." *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 571 (6th Cir. 2009). Temporal proximity alone may be sufficient to support a finding of causal connection where an employee's protected activity is immediately followed by an adverse employment action. *Molina-Parrales v. Shared Hosp. Services Corp.*, 992 F. Supp. 2d 841, 855 (M.D. Tenn. 2014) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("[W]here an employer fires an employee immediately after learning of a protected activity, we can infer a causal connection between the two actions, even if [plaintiff] has not presented other evidence of retaliation.").

Plaintiff claims she complained about sexual harassment by Spence on two occasions: to her manager, Ms. Cave-Johnson, in the spring of 2017 and directly to Baur on June 29, 2017. (Doc. No. 30-1 at 11-13.) She only appears to allege retaliation related to her complaint to Baur. (Doc. No. 28 at 10-11.) After complaining to Baur about Spence's behavior, Plaintiff claims she was told to leave the office and was fired later that afternoon. Plaintiff asserts she was fired in retaliation for complaining about Spence's behavior and that her firing was close enough in time to her complaint to raise an inference that the two actions were causally connected.

Defendant argues Plaintiff's statements about Spence were so vague that Baur was not even aware she was making a complaint of sexual harassment. Whether Baur subjectively knew Plaintiff was complaining of harassment is a question of fact for the jury. Plaintiff has presented evidence that could lead a jury to conclude she had stated a complaint of sexual harassment against Spence and that Baur was aware of the complaint.

Defendant also argues Plaintiff has not established the fourth element – a causal connection between the adverse employment action and Plaintiff's protected activity. Proof by a preponderance of the evidence is not required at this stage; Plaintiff must produce sufficient evidence from which an inference can be drawn that Defendant took the adverse employment action because of her complaints of sexual harassment. *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding temporal proximity sufficient to allege causation when the plaintiff was fired three months after filing a charge with the employment commission). "Although no one factor is dispositive in establishing a causal connection, evidence … that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland*, 22 F.3d 559, 563. *See also*, *Little v. BP Exploration & Oil Co.*, 265 F.3d 357 (6th Cir. 2001) (evidence plaintiff was terminated less than a year after filing

a first EEOC complaint and three months after filing a second created a genuine issue of material fact as to causation).

The temporal connection between the complaints to Baur on June 29, 2017, and Plaintiff's termination is such that, even in the absence of other events, the court finds sufficient evidence from an inference of causation could be drawn.

Plaintiff has established a prima facie case for retaliation. Therefore, the burden of production shifts to the defendant, which may offer a non-discriminatory reason for the adverse employment action. *Ladd v. Grand Trunk W.R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). To satisfy this burden, Defendant "need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivation by discriminatory animus." *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981). Defendant claims Plaintiff was fired because she did not return to work after lunch, she had a history of disciplinary actions for attendance issues and "insubordination," and she had just received a final warning a few days before. (*See* Doc. No. 31-2 at 8; Doc. No. 25-1.)

The Defendant has given a non-discriminatory reason for Plaintiff's firing. The burden is now Plaintiff's to demonstrate that the reason was "mere pretext." *Ladd*, 552 F.3d at 502. Pretext can be established by showing that the proffered reason was factually false, did not actually motivate discharge, or was insufficient to motivate discharge. *Id*. Courts have recognized that in retaliation cases, an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage. *Singfield*, 389 F.3d at 564. "[C]aution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Singfield*, 389 F.3d at 564. *See also United States Postal Serv. Bd. of*

15

*Governors v. Aikens*, 460 U.S. 711, 716 (1983) (acknowledging that discrimination cases present difficult issues for triers of fact because there is rarely "eyewitness testimony as to the employer's mental process.")

Plaintiff argues that many employees with similar attendance issues have not been fired. Indeed, Defendant admits that absenteeism is common, and some employees have personnel files "thick with writeups." (Doc. No. 31-1 at 11.) The Court finds that Plaintiff has provided evidence sufficient to withstand the motion for summary judgment and that there are disputes of material fact. Based on the evidence presented a jury could conclude that Plaintiff complained of sexual harassment, that adverse employment action was taken because of her complaints, and that Defendant's stated reason for firing her was pretextual. Therefore, Defendant's motion for summary judgment on the retaliation claim is DENIED.

## IV. CONCLUSION

For the reasons stated, Plaintiff has met her burden to produce evidence from which a reasonable inference of sexual harassment and retaliation can be drawn, and Defendant has failed to show there are no disputes of material fact. However, Plaintiff's claim for hostile work environment suffers a different fate, as explained above. Therefore, the Motion for Summary Judgment is GRANTED in part and DENIED in part.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE